UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALEXANDER MOONEY and KEVIN BARTLETT, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, | ) ) ) ) | |
| v. | ) ) | Civil Action No.:  1:14-cv-13723-IT |
| DOMINO'S PIZZA, LLC, G.D.S. ENTERPRISES, INC., and GEOFFREY D. SCHEMBECHLER Defendants. | ) ) ) ) ) | |

## OPPOSITION OF DEFENDANTS TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### INTRODUCTION

Plaintiffs worked as delivery drivers for Defendant G.D.S. Enterprises, Inc. ("GDS"), a franchisee of Defendant Domino's Pizza LLC ("DPLLC") that is owned and operated by Defendant Geoff Schembechler.  Although they worked in only two GDS stores, Plaintiffs seek to act as class representatives for all delivery drivers across GDS' seven stores for claims: (1) that all Defendants violated the Massachusetts Tips Law, M.G.L. ch. 149 § 152A, based on the delivery charge imposed on customers by GDS (Count I); and (2) that GDS and Schembechler violated the Massachusetts Minimum Wage Law, M.G.L. ch. 151, because of the delivery charge and because of alleged underpayment with regard to in-store work performed by drivers (Count II).  Plaintiffs have failed to meet their burden under Rule 23 for either claim.

Despite Plaintiffs' representation that "in the absence of class treatment few (if any) other drivers will enforce their rights under the Massachusetts Wage laws" (Motion, p. 14), Plaintiffs' counsel has filed no fewer than five cases on behalf of delivery drivers employed by Domino's franchisees asserting Tips Law and minimum wage claims.  One of these cases was tried as a test case, and the jury rendered a defense verdict in October 2015.  Lisandro v. Domino's Pizza, Inc.,

et al., C.A. No. 1:15-cv-11584-WGY Docket Nos. 80, 92. The Court subsequently denied class certification as to a state-wide class. Id., Docket No. 90.[1]

Plaintiffs' have not satisfied the requisite factors in Rule 23(a). First, Plaintiffs have not satisfied their burden on commonality. Despite Plaintiffs' assertion that they have satisfied this element by asserting a single common practice (Motion, p. 8), in the wake of Wal-Mart Stores, Inc. v. Dukes, et al., 131 S. Ct. 2541, 2551-52 (2011) merely alleging a common practice is insufficient to establish commonality. Raposo v. Garelick Farms, LLC, 293 F.R.D. 52, 55 (D. Mass. 2013). Further, although Plaintiffs' seek to posit seemingly common questions, those questions are incapable of generating common answers under the rigorous analysis required. Dukes, 131 S. Ct. at 2550. Specifically, those questions cannot be answered in one stroke and will necessarily vary by individual class members. Id. Each ordering and delivery experience is individualized. Beyond which method of ordering each customer used (website, mobile application, telephone) there exists a host of variables that make it impossible to determine liability on a class-wide basis. These include, without limitation:

- Did the customer realize there was a delivery charge in the first place?
- Did the customer speak with an order taker about the delivery charge?
- Did the customer see a box-topper?
- What did the delivery driver say?
- Did the customer receive a printed credit card receipt?
- Is the customer a repeat customer?

The inside work claim is also not amenable to class treatment. Although drivers may have clocked out and then back in for deliveries, individualized inquiries remain with regard to inside work. See Raposo, 293 F.R.D. at 56-59 (despite employer's automatic meal break deduction policy, no commonality where individualized inquiries remain concerning whether

---

[1] Carpaneda v. Domino's Pizza, Inc., et al., 1:13-cv-12313-WGY; Prinholato v. Domino's Pizza, Inc., et al., 1:14-cv-12483-WGY; Lisandro v. Domino's Pizza, Inc., et al., 1:15-cv-11584-WGY; Tigges v. Domino's Pizza, Inc., et al., 1:15-cv-13485-WGY; and Reeves v. PMLRA Pizza, Inc., et al., 1:16-cv-10474-WGY.

and how much putative class members worked and were paid).

Second, Plaintiffs have failed to meet their burden as to typicality. In fact, as to the delivery charge, Plaintiffs admit that they do not have knowledge about the delivery charge practices of other delivery drivers. This admission precludes them from satisfying their burden and is alone grounds for denying their motion. Rios v. Current Carrier Corp., C.A. No. 14-10247, 2015 WL 1443058, *2-3 (D. Mass. March 30, 2015). Further evidence and defenses as to both the delivery charge claim and inside work claim will vary across the drivers of the putative class. Indeed, they even vary between the small subset of these two named Plaintiffs.

Even if they could establish the requisite elements of Rule 23(a), Plaintiffs also cannot satisfy either of the more rigorous predominance and superiority requirements of Rule 23(b)(3). Resolution of the putative class members' claims will require fact-specific inquiries regarding each customer and each transaction, as well as the practices and duties of each driver. These claims are not subject to common evidence, and legal defenses as to Plaintiffs and other putative class members also differ. Accordingly, Plaintiffs have not established predominance. Under these circumstances, superiority is also lacking because a class action would be neither an efficient nor a fair method adjudicating the asserted claims.

## FACTUAL BACKGROUND

Geoff Schembechler delivered pizzas part-time during college. Shortly after graduating, he worked for Domino's first in marketing and then in Domino's stores, making and delivering pizzas in order to qualify to become a store manager  Eventually, he acquired his own franchise in Massachusetts and today GDS operates seven franchise stores.[2]  (Schembechler Depo., pp. 9-10).

---

[2] GDS has stores located in Lowell, Chelmsford, Methuen, Lawrence and Andover, Massachusetts.

GDS began charging a delivery charge in 2009 to offset the rising costs of operations. The amount of the delivery charge has changed over time. (Schembechler Aff., ¶ 3).[3]  The delivery charge is not, and was never intended to be, a tip for the driver.  Id.  In fact, during their employment with GDS, neither Mooney nor Bartlett ever thought the delivery charge was intended to be a tip.  (Exh. 1, p. 38; Exh. 2, p. 82).[4]  And, despite their claims, Bartlett and Mooney received tips from customers a vast majority of the time.  (Exh. 2, p. 22 (80-85%); Exh. 1, p. 70 (75%)).

GDS is a franchisee of DPLLC.  Unlike some other states, DPLLC does not operate any stores in Massachusetts.  (Kapp Aff., ¶ 1).  DPLLC did not employ Plaintiffs or any other drivers who worked for GDS.  (Kapp Aff., ¶ 2).  DPLLC does not mandate that franchisees impose a delivery charge and DPLLC does not receive any direct payment of any portion of the delivery charge.  (Kapp Aff., ¶¶ 3 and 4).  Plaintiffs allege only that DPLLC receives from its franchisees a percentage-based royalty payment based upon *all* revenues.  (Compl. ¶ 27).[5]

Since 2009, the notice that "[a]ny delivery charge is not a tip paid to your driver" has appeared on pizza boxes, on the website and mobile applications, and in marketing materials. (Kapp Aff., ¶ 6).  Plaintiffs acknowledge the presence of delivery charge notice statements provided in at least three different ways to delivery customers, notifying them that any delivery charge imposed is not a tip for the delivery driver.  (See Compl. ¶¶ 22-23, 26).  Every pizza delivery box that Plaintiffs carried contained a notice.  (See Compl. ¶ 26).  Plaintiffs acknowledge that customers who order on the website are presented with notice prior to placing

---

[3] Docket No. 45; Exhibit 1.
[4] Plaintiffs' transcripts are attached to the Affidavit of Daniel J. Blake filed herewith.
[5] Plaintiffs' Second Amended Complaint [Docket No. 47] is cited as "Compl. ¶ __" herein.

their order, (see Compl. ¶ 22), and that the same notice also appears on the order interface for mobile devices, (see Compl. ¶ 23).[6]

GDS' stores have a wide variety of customers from varying socioeconomic backgrounds. (Schembechler Aff., ¶ 2). Many customers are repeat customers. (Schembechler Aff., ¶ 6). Some customers place small orders of $10.00-$15.00; some customers place orders as large as $50.00-$100.00 or more; and some customers even have orders of $0 when using a coupon or other discount. (Schembechler Aff., ¶ 7). Certain customers order online, and other customers order by telephone directly to local franchise stores. (Schembechler Aff., ¶ 8). Some customers pay by credit card, while others pay using cash. (Schembechler Aff., ¶ 9). When paying by credit card, customers receive a receipt that includes a separate line item for a tip. Id.

GDS uses individualized "box toppers," which are advertisements placed on top of pizza boxes, that explicitly state, "any delivery charge is not a tip paid to your driver." (Schembechler Aff., ¶ 12). Other means of communicating the delivery charge include the mailing materials, order receipts, and store personnel communicating with customers. (Kapp Aff., ¶ 8). At the store level, GDS drivers have always been permitted to inform customers that the delivery charge is not a tip. (Schembechler Affidavit, ¶ 13). Some customers ask drivers about the delivery charge, while other customers do not. (Exh. 1, pp. 46, 65-66; Exh. 2, pp. 61-63).

Drivers indicate on a store computer when they are leaving on a delivery and when they have returned. (Schembechler Depo., pp. 65-66). While in the store, they may perform tasks such as folding boxes, answering the telephone and preparing for the next delivery. Bartlett

---

[6] While certain language may be consistent, the placement and formatting of the language may vary depending upon the computer or mobile device being used by a customer. Moreover, additional language is provided to customers depending upon the ordering method. For example, customers ordering on the website receive a notification stating: "Feeling generous? You can tip at the door." (for customers paying by cash) and "Feeling generous? You can tip at the door when you sign the credit card receipt." (for customers paying by credit card). (Kapp Aff., ¶ 7).

testified that he also performed other types of work such as electrical wiring, hanging signage and fixing sinks.  (Exh. 2, p. 29).

The rates paid to drivers by GDS vary by individual and across stores based on factors as timing of shift, location, experience and retention considerations.  (Schembechler Aff., ¶ 4). Although treated as tipped employees, some drivers are and have been paid an hourly wage that equals or exceeds the Commonwealth's regular minimum wage.  Id. at 5.  All Chelmsford drivers, the store where Plaintiffs worked, began receiving the regular minimum wage in January 2013.

**ARGUMENT**

**A.**   **Plaintiffs' Motion Cannot Survive the Rigorous Analysis Required Under Rule 23 for Granting Class Certification.**

While Plaintiffs suggest that they satisfy the class certification requirements with relative ease, the Supreme Court has made clear that the Rule 23 class action device is "designed as an ***exception*** to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (internal citation omitted).  Class certification is appropriate only if, "after a rigorous analysis," the trial court is satisfied that the requirements of Rule 23 are met.  Dukes, 131 S. Ct. at 2551; Comcast, 133 S. Ct. at 1432 (quoting Dukes, 131 S. Ct. at 2551-52) ("a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23.").  Plaintiffs bear the burden of showing that all the prerequisites for a class action have been met, Makuc v. Am. Honda Motor Co., Inc., 835 F.2d 389, 394 (1st Cir. 1987), so that the court can "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Waste Mgmt. Holdings v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000).

**B.   Plaintiffs Cannot Affirmatively Demonstrate Two of the Four Prerequisites to Class Certification Under Rule 23(a) and Cannot Demonstrate Predominance or <u>Superiority Under Rule 23(b).</u>**

Defendants do not challenge numerosity or adequacy.  Plaintiffs, however, cannot satisfy the commonality and typicality requirements of Rule 23(a), nor can they satisfy the predominance and superiority requirements of Rule 23(b).  The party seeking class certification bears the burden of demonstrating that each of the requirements of Rule 23(a) is satisfied. <u>Dukes</u>, 131 S. Ct. at 2551-52; <u>Amchem Prods. v. Windsor</u>, 521 U.S. 591, 614 (1997).  Because Plaintiffs have not done so, their motion should be dismissed.

**1.     Plaintiffs Have Not Met the Commonality Requirement of Rule 23(a).**

Plaintiffs' suggestion that commonality is easily demonstrated is misplaced.  (Motion, pp. 7-8).  To the contrary, "[d]istrict courts are to perform a 'rigorous analysis' to determine that the commonality requirement is satisfied, 'because actual, not presumed, conformance with Rule 23(a) remains indispensable."  <u>Raposo</u>, 293 F.R.D. at 55 (citing <u>Dukes</u>, 131 S. Ct. at 2551-52).

Commonality requires a plaintiff to demonstrate that class members "have suffered the same injury."  <u>Dukes</u>, 131 S. Ct. at 2550.  To show commonality, plaintiffs must demonstrate that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This does not mean merely that they have all suffered a violation of the same provision of law.  <u>Dukes</u>, 131 S. Ct. at 2551-52 ("[Rule 23(a)'s] language is easy to misread, since '[a]ny competently crafted class complaint literally raises common questions.'").  In analyzing whether a purported class has sufficient commonality, a court should not consider "common questions" but rather "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  <u>Id</u>. at 2551.  Under Rule 23(a)(2) a plaintiff must depend on a common contention where "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Id</u>.  In other words, the commonality requirement is met

where the "questions that go to the heart of the elements of the cause of action" will "each be answered either 'yes' or 'no' for the entire class" and "the answers will not vary by individual class member." Raposo, 293 F.R.D. at 55 (citing Donovan v. Philip Morris USA, Inc., C.A. No. 06-12234, 2012 WL 957633, at *21 (D. Mass. March 21, 2012)).

      a.    The Delivery Charge

      The questions posited by Plaintiffs are the types of facially common questions that the Supreme Court cautioned about in Dukes. (Motion, pp. 8-9). They cannot be answered "yes" or "no" for the entire class and the answers will vary by individual class members. Raposo, 293 F.R.D. at 55.

      The question of whether the delivery charge assessed by GDS constitutes a "service charge" within the meaning of the Massachusetts Tips Law cannot be determined in one stroke because of subjective and fact-specific nature of each delivery. The Massachusetts Tips Law defines a service charge to include "a fee that a patron or consumer would reasonably expect to be given to a … service employee." M.G.L. ch. 149, § 152A(a).

      In Luiken v. Domino's Pizza LLC, 705 F.3d 370 (8th Cir. 2013), the Eight Circuit reversed the District of Minnesota's certification of a class of delivery drivers, who, like the Plaintiffs here, alleged that the fixed delivery charge paid to Domino's was a gratuity wrongfully withheld from them. Luiken, 705 F.3d at 372. The statute at issue in Luiken defined "gratuity" to include "an obligatory charge assessed to customers, guests or patrons which might reasonably be construed by the guest, customer, or patron as being a payment for personal services rendered by an employee." Id. at 372-73 (quoting Minn. Stat. § 177.23 Subdiv. 9). The Court reasoned that "[t]he customer's circumstances determine whether the delivery charge might be reasonably be construed as a payment for personal services," and therefore a "gratuity." Id. at 373. The

Court stated that while liability is "based on objective, reasonable person standard, "context can be critical in applying such a standard." Id. The Court articulated the following circumstances as relevant to "determining whether customers might reasonably construe [the delivery charge] as a payment for personal services": (1) whether the driver explained that the charge was not a gratuity; (2) whether customers asked about the charge; and (3) whether the charge was within the normal range for a tip in the delivery area. Id. at 373-75. The Court held that: "Because varying circumstances guide the statutory standard, the certified class does not meet the requirement of commonality." Id. at 376.

The Massachusetts Tips Law is similar to the statute at issue in *Luiken* in that it bases liability on an "objective, reasonable person standard." Luiken, 705 F.3d at 373. Just as the Court in Luiken found that varying circumstances were relevant to whether customers might reasonably construe the delivery charge as a payment for personal services, so too are varying circumstances here relevant to whether customers might reasonably expect the GDS delivery charge to be given to the driver.

The same varying circumstances that prevented class certification in Luiken are also present in this case, and there are additional varying circumstances. As in Luiken, GDS delivery drivers sometimes inform their customers of the delivery charge, but other times they do not. In fact, the practices of the two named Plaintiffs differed. With regard to taking orders by telephone, Mooney testified that he would mention the delivery charge only if asked. (Exh. 1, p. 42). On the other hand, Bartlett testified that he always told customers calling to order that there was a delivery charge as a matter of personal practice. (Exh. 2, pp. 59-60). During the class period, GDS added a placard and computer prompt for order-takers reminding them that the delivery charge is not a tip. Employees were instructed that they could read those statements to a

customer while taking the order.  (Schembechler Aff., ¶ 10).  Mooney's and Bartlett's experience

at the customer's front door differed as well.  Bartlett testified that customers occasionally asked

whether there was a delivery charge and how much it was.  In such instances, Bartlett would

respond that there was a delivery charge and inform the customer of the amount.  (Exh. 2, p. 62).

No customer that Bartlett delivered to asked him why there was a delivery charge and he does

not remember ever having further discussion about the delivery charge.  Id. at 63.   Mooney's

experience was quite different.  Mooney testified that he would not say anything about the

delivery charge at the front door unless he was asked.  (Exh. 1, pp. 59-61).  About a quarter to a

third of the time, a customer would ask Mooney for a breakdown.  Id. at 63.  Mooney further

testified that on about a third of those occasions, customers complained.  Mooney testified that

he told those complaining customers "every time" that the delivery charge was not a tip.  Id. at

65.

    In addition to direct customer communications, the Eight Circuit also recognized that

further relevant evidentiary issues will exist including the socioeconomic demographics of each

delivery area, and the customers' reasonable expectations in each area.  See Luiken, 705 F.3d at

375 (finding that the delivery areas were "diverse areas and the delivery charge was sometimes

within the normal range for a tip, but sometimes well outside it.").  Those same variables and

differences exist here.  Bartlett testified that tip amounts "had a lot to do with the basic makeup

of the town" and income level.  (Exh. 2, pp. 72-73).[7]  Tips also varied by the amount of the order

and quality of service.  (Exh. 2, p. 68).

---

[7] To the extent Plaintiffs allege that notices to customers are insufficient under the Tips Law safe harbor M.G.L. ch. 151A(3), that question cannot be resolved so as to determine liability in one stroke because of the multiple of other factors at play, including which of the notice(s) the customer saw, as they have been augmented by GDS over time. (Schembechler Aff., ¶¶ 10-12).

The decision to order from GDS inevitably triggers a chain of events that must be individually analyzed in order to determine the customer's subjective mindset.   First, the ordering experience is not universal.  Some customers order through the website or web application and receive notices informing them that the delivery charge is not a tip.  Others may call and speak with a store employee.  GDS also utilized additional methods designed to underscore that any delivery charge is not a tip for the driver.  (Schembechler Aff., ¶¶ 10-12). For example, beginning in late August or early September, 2015—after Bartlett's employment with GDS ended but before Mooney's, GDS added additional notices on "box toppers," and other media.  (Schembechler Affidavit, ¶ 12).

The circumstances of a customer's payment also must be analyzed.  A customer paying by credit card sees an additional line for a gratuity on the credit card receipt.  During the class period, GDS also began affixing a placard to the receipt folio which gives further notice that the delivery charge is not a tip.  (Schembechler Depo., pp. 75-76).[8]

Then there is the in-person transaction at the door.  Plaintiffs acknowledge that the pizza box contains a notice that specifically states that the delivery charge is not a tip.  Plaintiffs take no account of what a driver may say—or is instructed by GDS to say—upon meeting the customer as discussed in Luiken.

All of these varying circumstances prevent class certification as to the delivery charge.  In sum, whether a customer would reasonably expect the delivery charge to be given to the driver differs based on the varying circumstances of each transaction differs and "no decisive context

---

[8] Plaintiffs' own testimony demonstrates that credit card customers did not believe the delivery charge was a gratuity for the driver.  Mooney admitted that 50-75% of customers who paid using a credit card added a tip in the space provided on the credit card slip and that approximately 25% of the time, credit card customers gave Mooney a cash tip instead of adding a tip on the receipt.  (Exh. 1, pp. 69-70).  Bartlett testified that credit card customers tipped 80-85% of the time by filling in a tip amount on the credit card slip.  (Exh. 2, p. 64).  Bartlett further testified that, although infrequently, "there were a few folks who would pay a cash tip when they were paying with a credit card." Id. at p. 65.

pervades Domino's [Massachusetts] deliveries." <u>Luiken</u>, 705 F.3d at 376.  Liability in this case

cannot be determined "in one stroke." <u>Dukes</u>, 131 S. Ct. at 2551.

      b.    <u>Inside Work</u>

Plaintiffs have likewise failed to satisfy their burden with regard to their inside work

minimum wage claim in Count II.  As an initial matter, Plaintiffs' assertion that they satisfy

the commonality prerequisite because they have alleged a company-wide policy or practice

<u>citing</u>, <u>Overka v. American Airlines, Inc.</u> (Motion, p. 8), is incorrect.  Judge Gorton of this

Court considered and rejected that argument in a case where plaintiffs sought to rely solely on

their proffer of system-wide automatic deduction and break policies to establish commonality.

<u>Raposo</u>, 293 F.R.D. at 56-58 (2013).  The <u>Raposo</u> court noted that, following <u>Dukes</u>, moving

plaintiffs must go beyond asserting a common practice and present questions capable of

generating common answers.  <u>Id</u>. at 56.  One of GDS and Schembechler's defenses to

Plaintiffs' inside work claim is that the work cited by Plaintiffs, <u>i.e.</u>, folding boxes, answering

the telephone and packaging deliveries, are all duties related to tip-producing work.  As such,

GDS was not obligated to pay them at the regular minimum wage rate.  The FLSA regulations

address the situation where employees perform duties in addition to direct service to

customers:

> In some situations an employee is employed in a ***dual job***, as for example
> where a maintenance man in a hotel also serves as a waiter. In such a
> situation, the employee, if he customarily and regularly receives at least $30
> a month in tips for his work as a waiter, is a tipped employee only with
> respect to his employment as a waiter. He is employed in two occupations,
> and no tip credit can be taken for his hours of employment in his occupation
> of maintenance man. ***Such a situation is distinguishable from that of a
> waitress who spends part of her time cleaning and setting tables, toasting
> bread, making coffee, and occasionally washing dishes or glasses. It is
> likewise distinguishable from the counterman who also prepares his own
> short order or who, as part of a group of countermen, takes a turn as a
> short order cook for the group. Such <u>related duties</u> in an occupation that***

> ***is a tipped occupation need not by themselves be directed toward
> producing tips.***

29 C.F.R. § 531.56(e) (1998) (emphasis added).[9]

Whether and to what extent this defense pertains require individualized inquiries.  The

best example is the circumstances of the two named plaintiffs.  Mooney described performing

activities such as answering the phone and folding boxes, which GDS and Schembechler assert

are duties related to tip-producing work and therefore permissibly paid at a tipped rate.  (Exh. 1,

pp. 29-30).  Co-plaintiff Bartlett performed such duties as well, but Bartlett also testified that he

performed maintenance work such as electrical wiring, fixing sinks and hanging signage.  (Exh.

2, p. 29).  An analysis of Bartlett's inside work claim therefore necessarily varies from

Mooney's claim.  Across the broader class, analysis of whether time should be paid at the

regular minimum wage will depend on individualized inquiries.  Plaintiffs have accordingly not

demonstrated commonality.

### 2.        Plaintiffs have Not Affirmatively Demonstrated Typicality.

As with commonality, Plaintiffs set a low bar for themselves by asserting that typicality

is "not highly demanding," citing <u>Payne v. Goodyear Tire & Rubber Co.</u>, 216 F.R.D. 21, 24-25

(D. Mass. 2003).  (Memorandum, p. 9).  Plaintiffs go on to suggest that "any driver picked at

random would be typical, because the challenged practice affected every driver," citing

<u>McLaughlin v. Liberty Mut. Ins. Co.</u>, 224 F.R.D. 304, 309-10 (D. Mass. 2004).  These bald

assertions are insufficient to satisfy the typicality requirement under the rigorous analysis

required under <u>Dukes</u>.

### a.        The Delivery Charge

---

[9] The Massachusetts wage laws were intended to be essentially identical to the FLSA and, as such, Massachusetts
Courts look to the FLSA for guidance.  <u>Mullally v. Waste Management of Mass., Inc.</u>, 452 Mass. 526, 531 (2008).
<u>See also</u> <u>Wyman v. Aprile's European Restaurant LLC</u>, 12-cv-11560-DJC (D. Mass.), Docket No. 22, (J. Casper
considering FLSA in-state claim by tipped employees for non-tipped work).

Case 1:14-cv-13723-IT   Document 52   Filed 03/09/16   Page 14 of 20

As a threshold matter, Plaintiffs have not and cannot meet their typicality burden because they do not know what practice other drivers followed with regard to deliveries.

Mooney testified:

> Q. Do you know if other drivers following the same process you followed when delivering to a customer?
> **A. I do not.**
> Q. You don't know one way or the other?
> **A. No.**
> Q. Do you know if any drivers for G.D.S. in Chelmsford would affirmatively bring up the delivery charge?
> **A. I do not.**
> Q. Did you ever talk to any other G.D.S. delivery drivers about how they approached the delivery charge.
> **A. I did not.**

(Exh. 1, p. 88). Bartlett testified in a like manner. (Exh. 2, p. 62). Plaintiffs' testified that although they were not prohibited from telling customers that the delivery charge was not a tip, their practice was not to do so. (Exh. 1, pp. 59-60; Exh. 2, p. 55). By their own admission, however, Plaintiffs cannot speak for other drivers and therefore cannot meet their burden of establishing that they are typical class representatives.

Judge O'Toole of this Court recently considered a similar situation in a case involving courier drivers asserting minimum wage and overtime violations under the Fair Labor Standards Act ("FLSA") and Massachusetts Wage laws. Rios v. Current Carrier Corp., C.A. No. 14-10247, 2015 WL 1443058 (D. Mass. March 30, 2015). In first considering Plaintiffs' assertions under the less rigorous collective action certification test of the FLSA (29 U.S.C. § 216(b)), the court found that:

> "[N]one of plaintiffs' extensive briefing contains facts about other employees sufficient to compare their situations relative to the plaintiffs. In fact, the plaintiffs say, in effect, they do not know what the circumstances of the other employees are."

Rios, 2015 WL at *2. On this basis, the court found that the Rios plaintiffs had failed to "put

forth a sufficient description of the circumstances of the other employees to permit a reasoned evaluation of whether those other employees are 'similarly situated' in relevant respects to the plaintiffs." Id. Having failed to satisfy the "modest" similarly situated burden of FLSA Section 216, the court found that the plaintiffs had necessarily failed to meet the more demanding burden of Rule 23(a). Id. at *2-3.[10]

Even if Plaintiffs could overcome their failure to plead factual information sufficient to meet their burden on typicality and their admission as to the delivery charge that they do not know the practices of other drivers, they still cannot satisfy the typicality element. The central inquiry in determining whether a proposed class has "typicality" is whether each class representative's claims have the same essential characteristics as the claims of the other members of the class. George v. National Water Main Cleaning Co., 286 F.R.D. 168, 176 (D. Mass. 2012). "The typicality inquiry is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." DeRosa v. Mass. Bay Commuter Rail Co., 694 F. Supp. 2d 87, 100 (D. Mass. 2010) (quoting In re Boston Scientific Corp. Sec. Litig., 604 F. Supp. 2d 275, 282 (D. Mass. 2009).

In evaluating typicality, courts seek to ensure that the "named plaintiff[s], in presenting [their] case, will necessarily present the claims of the absent plaintiffs." George, 286 F.R.D. at 176 (quoting Randle v. Spectran, 129 F.R.D. 386, 391 (1988)). The First Circuit has directed that the presence of an affirmative defense, such as the existence of a release, should be considered in making class certification decisions. Waste Mgmt. Holdings, Inc., 208 F.3d at 295.

Defenses that are peculiar to the named plaintiff, or a small subset of the plaintiffs, may destroy the required typicality of the class. McAdams v. Mutual Life Ins. Co., C.A. No. 99-

---

[10] Judge O'Toole found that this failure applied not only to typicality, but also to commonality and predominance. Rios v. Current Carrier Corp., C.A. No. 14-10247, 2015 WL 1443058, at *3 (D. Mass. March 30, 2015).

30284, 2002 WL 1067449, at *5 (D. Mass. May 15, 2002); In re Credit Suisse AOL Sec. Litig.,

253 F.R.D. 17, 23 (D. Mass. 2008) (finding typicality may be defeated "where the class

representatives are subject to unique defenses which threaten to become the focus of the

litigation"); Garcia v. E.J. Amusements, Inc., 98 F. Supp. 3d 277, 288 (D. Mass 2015) ("It may

also be defeated where class members have additional claims or remedies that are unavailable to

the class representative.").

 Plaintiffs do not meet the requirements of typicality.  As described in the commonality

section above,[11] there are a host of variables in considering whether the delivery charge is a

service charge and Plaintiffs cannot show – and in fact have not asserted – that their experience

matches that of other drivers.

 To the extent Plaintiffs challenge the sufficiency of designations informing customers that

the delivery charge is not a tip, those designations were augmented by GDS over time and that

issue is not capable of uniform analysis.  Mooney testified that he was familiar with designation

on the boxes, website and menus.  (Exh. 1, pp. 94-97).  Additional designations were added

during Mooney's employment such as box toppers and menu designations (Exh. 1, pp. 96-97).

Still other designations are in use following the departures of Bartlett and then Mooney, including

the bold placards in credit card receipt holders and bright red stickers used to affix box toppers.

(Schembechler Aff., ¶¶ 10-12).

 b.   Inside Work

 With regard to the inside work claim, Plaintiffs again fail to allege specific factual support

beyond stating that they clocked out when they left for a delivery and clocked in when they

returned to the store.  (Motion, p. 5).  Even accepting Plaintiffs' assumption that the time recorded

---

[11] Courts recognize that commonality, typicality and predominance are similar inquiries and often involve analysis of common factors.  See, e.g., Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982).

before leaving for a delivery and then after returning was actual work time, the defenses available

to GDS ands Schembechler will differ.  For example, unlike Mooney, Bartlett and other drivers

may assert that the work they performed, at times, was not subject to the related duties defense,

but that they held dual jobs entitling them to the higher regular minimum wage.  (Exh. 2, pp. 28-

29).

Because Plaintiffs have not demonstrated typicality, their motion should be denied.

## C.    PLAINTIFFS ALSO FAIL TO SATISFY THE REQUIREMENTS OF RULE 23(b).

Even if Plaintiffs could satisfy the requirements of Rule 23(a), Plaintiffs cannot satisfy

the more demanding requirements of Rule 23(b).

### 1.    Liability cannot be established through common proof, thus the Rule 23 predominance requirement has not been met.

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."

Comcast, 133 S. Ct. at 1432 (citing Amchem Products, 521 U.S. at 623-24).  To meet the

predominance requirement of Rule 23(b)(3), the party seeking certification must show that

defendants' liability to all plaintiffs can "be established through common proof" and that "any

resulting damages would likewise be established by sufficiently common proof."  See In re

Nexium Antitrust Litig., 777 F.3d 9, 18 (1st Cir. 2015); see also Schwann v. FedEx Ground

Package Sys., C.A. No. 11-11094, 2013 WL 1292432, at *3 (D. Mass. Apr. 1, 2013) (denying

class certification for putative class of FedEx drivers alleging violations of Massachusetts

Independent Contractor statute, even where all drivers operated under the same "Operating

Agreement," because individualized proof was required to evaluate if plaintiffs met first and

third prong of the test); Glass Dimensions, Inc. v. State St. Bank & Trust Co., 285 F.R.D. 169,

180 (D. Mass. 2012) ("The claims are subject to common proof because they rest on

documentation that was applicable to all the lending funds in question").  Abla v. Brinker Rest.

<u>Corp.</u>, 279 F.R.D. 51, 57 (D. Mass. 2011) (no predominance where "banquet contracts often differ between different restaurant locations, and even between different events at the same restaurant.")

Even if Plaintiffs could clear the commonality and typicality hurdles, they simply cannot show predominance. As described above, individual issues predominate in this case. There is no common evidence that would allow the Court to determine: (1) whether a customer reasonably expects the delivery charge to be given to the driver; (2) whether the notices about the delivery charge (which were augmented during the class period) were sufficient under the Tips Law's safe harbor; and, (3) whether the class was not properly compensated for inside work by GDS. Class certification is not appropriate where "lengthy, individualized inquiries" and "mini-trials" would be necessary to decide each putative class members' claim. <u>De Giovanni v. Jani-King Int'l, Inc.</u>, 262 F.R.D. 71, 77-78 (D. Mass. 2009). <u>See also</u> <u>Moniz v. CrossLand Mortg. Corp.</u>, 175 F.R.D. 1, 4 (D. Mass. 1997) ("[T]his Court would have to evaluate each of the 18,000 transactions at issue to determine if the broker received the right amount of compensation . . . . This analysis necessarily would result in questions regarding individual members of the class predominating over questions common to the class.").

Here, for each putative class member's claim, the Court would need to make fact-specific inquiries about: (1) the practices applicable to and followed by each driver; (2) each customer's reasonable expectations for each transaction; the designations customers were given, their discussions with drivers, ordering history, etc.; and (3) the nature and amount of any work performed while not clocked out on deliveries. This is hardly common proof and Plaintiffs do not show that the proposed class is "sufficiently cohesive" to warrant certification. Because Plaintiffs cannot establish predominance, this Court should not certify the class.

### 2.      A Class Action is Not a Superior Method of Adjudication.

The Court may certify Plaintiff's proposed class only if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). The requirement of superiority, like the predominance criterion, "ensures that resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  Abla, 279 F.R.D. at 58 (citing In re Relafin Antitrust Litig., 218 F.R.D. 337, 346 (D. Mass. 2003).  Under Rule 23, a class action must represent the best "available method [] for the fair and efficient adjudication of the controversy."  Id. "[A] class action must be superior, not just as good as, other available methods."  Id.

Adjudication of Plaintiffs' Tips Law and inside work claims as a class action would be unmanageable, if not impossible, based on the circumstances described above.  Otte, ex rel. Estate of Reynolds v. Life Ins. Co. of No. America, 275 F.R.D. 50, 59 n.13 (2011).  Plaintiffs have not sufficiently shown that a single set of circumstances was common to all GDS delivery drivers, thus a fact-specific inquiry into which practices were in effect and the circumstances surrounding individual transactions would be necessary to establish liability.  Such a proceeding would require an examination of the evidence bearing on individual deliveries and work activities over at least a three-year period.

Defendants must have the right to cross-examine each driver on his or her particular practice and particular interactions with delivery customers with respect to the delivery charge, as well as any inside work that the driver claims entitles him or her to compensation.  Defendants must also have the right to present evidence that particular customers in particular transactions, on the basis of an objective standard, could not reasonably have construed the delivery charge as

Plaintiff claims. Class action treatment, a procedural mechanism, cannot deprive Defendants of these rights. "[T]he Rules Enabling Act 28 U.S.C. 2072(b) forbids interpreting Rule 23 to abridge, enlarge or modify any substantive right. . ." Dukes 131 S. Ct. at 2561 (quoting 28 U.S.C. 2072(b)). Plaintiffs will need to prove liability as to each claim, as Defendants cannot be held liable for damages beyond the injury they caused. See In re Nexium Antitrust Litig., 777 F.3d at 18.[12] Because of the necessary and detailed individualized inquiries regarding liability, Plaintiffs have failed to demonstrate that proceeding as a class action is a superior method of adjudication.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Class Certification.

Respectfully submitted,
DEFENDANTS,
By their attorneys,

_/s/ Daniel J. Blake_
Kevin G. Kenneally, BBO #: 550050
Kevin.Kenneally@leclairryan.com
Daniel J. Blake, BBO #: 552922
Daniel.Blake@leclairryan.com
LECLAIRRYAN, P.C.
One International Place, 11th Floor
Boston, MA 02110
(617) 502-8200

## CERTIFICATE OF SERVICE

I, Daniel J. Blake, hereby certify that on this 9th day of March 2016, I served a copy of this document electronically through the ECF system to the registered participants on the Notice of Electronic filing (NEF).

_/s/ Daniel J. Blake_
Daniel J. Blake

17685049.1

---

[12] In this regard, Plaintiffs' Motion for Class Certification also raises standing issues under Article III. For example, drivers who affirmatively disclosed that the delivery charge is not a tip in each instance cannot allege "an injury in fact." Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).