UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER MOONEY and KEVIN BARTLETT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DOMINO'S PIZZA, LLC, G.D.S. ENTERPRISES, INC., and GEOFFREY D. SCHEMBECHLER,<br><br>Defendants. | Civil Action No.: 1:14-cv-13723-IT |

**DEFENDANTS' SUR-REPLY IN FURTHER SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
**(Leave to File Granted 4/13/16)**

As with their motion, Plaintiffs' reply over-simplifies the burden they must meet for class certification. Plaintiffs further assume or overstate their alleged support for the elements that are necessary for their motion to succeed. Finally, Plaintiffs seem to take no account of recent Supreme Court law underscoring the requirement of a rigorous analysis and the fact that mere allegations of common practices are insufficient for class certification. Wal-Mart Stores, Inc. v. Dukes, et al., 1361 S. Ct. 2541, 2551-52 (2011).

A.  **The Delivery Charge**

   1.  **Plaintiffs Present an Erroneous Picture of the Legal Elements at Issue**

In support of class certification on the delivery charge, Plaintiffs posit the simple question of "whether a reasonable customer would have expected that some or all of the defendants' delivery charges would be paid to drivers."[1] Plaintiffs would further have the Court believe that the answer to their sole question hinges only on the sufficiency of notices provided by

---
[1] Reply, p. 4. As Plaintiffs know, only GDS imposes a delivery charge, DPLLC does not.

Defendants through various media. Reply, p. 5. This is not an accurate representation of the legal issues and evidence here and one that is improperly skewed to shift the burden to Defendants.

There are in fact at least two discrete issues at play under the Massachusetts Tips Law. M.G.L. ch. 149, § 152A.[2] The first issue is whether the delivery charge is a "service charge" as defined by the Tips Law. In addition to a charge specifically designated as a "tip," the Tips Law defines a "service charge" to include "a fee that a patron or consumer would reasonably expect to be given to a … service employee." M.G.L. ch. 149, § 152A(a). Judge Young's jury instructions in Lisandro v. Domino's Pizza, Inc., et al., C.A. No. 15-cv-11584-WGY, ECF No. 97, which Plaintiffs cite in support, state exactly that. If the delivery charge is not a service charge, then Plaintiffs cannot recover. Id. at 81-82.[3]

Plaintiffs seek to bypass their burden to prove that the delivery charge is a service charge, in favor of putting the burden on Defendants to prove that they satisfy the separate safe harbor provision of the Tips Law. The safe harbor provides:

> Nothing in this section shall prohibit an employer from imposing on a patron any house or administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation or written description of that house or administrative fee, which informs the patron that the fee does not represent a tip or service charge for [employees.]

M.G.L. ch. 149, § 152A(d).

If Plaintiffs cannot prove that they are wait staff employees and that the delivery charge is a service charge, then the "reasonable customer" issue they pose has been answered and there is no reason to analyze the safe harbor and whether Defendants designations are sufficient as

---

[2] Plaintiffs must also prove they are non-managerial "wait staff" employees who (1) serve beverages or prepared food directly to patrons or clear patrons' tables, and (2) work in a restaurant, banquet facility or other place where prepared food or beverages are served. M.G.L. ch. 149, § 152A, Lisandro Jury Instructions, ECF No. 97, p. 80.
[3] Judge Young's statement regarding "sufficiently clear and unambiguous" notice (Reply, p. 5) was made in an earlier case in the context of a motion to dismiss. Carpaneda v. Domino's Pizza, Inc., et al., 991 F. Supp. 270, 274 (D. Mass. 2014). In charging the jury after a full trial in Lisandro, Judge Young did not use that language.

Plaintiffs suggest. To suggest that liability hinges solely on the sufficiency of Defendants' no-tip designations is plainly wrong.

Further, in keeping with their position that only Defendants' notices are at issue, Plaintiffs also claim that the Court could segregate the timing and type of order to achieve common answers. Reply, p. 8. This is faulty logic. There is no dispute that at all relevant times, the pizza boxes, website and mobile application contained a designation that the delivery charge is not a tip. But what other media customers may have seen in addition to these designations is not susceptible to common proof. For example, perhaps website orderers had also received and read a home mailing. In addition, repeat customers may have used differing ordering methodologies and seen multiple designations over the course of their orders. Customers may also have had specific conversations with drivers about the delivery charge, including conversations like those Mooney testified about when he told them that the delivery charge is not a tip. Mooney Depo., pp. 64-65.[4] No simple segregation of evidence is possible.

### 2. Common Evidence Does Not Exist

Plaintiffs also grossly overstate Defendants' argument about the individualized nature of the evidence in this case. Although an objective test, the context and circumstances of the customer's experience is critical in the analysis. The trial evidence will not simply be limited, as Plaintiffs assert, to (1) the frequency that customers asked about the delivery charge, and (2) what Plaintiffs term the "standard notices" on the pizza boxes, website and smartphone application. Reply, p. 6. Plaintiffs conveniently omit a host of other variables that bear directly on the customer's belief, if any, as to the delivery charge. Whether a driver affirmatively told customers that the delivery charge was not a tip, how often he or she did so, and for how long, are questions that can only be answered by the individual driver. In fact, the two named

---

[4] Mooney's deposition transcript was filed as ECF No. 54-1, Bartlett's as ECF No. 54-2.

Plaintiffs themselves testified that they had different practices with regard to taking orders and interacting with customers during deliveries.  Plaintiffs cannot represent to the Court that they know what other drivers did because they have already testified they do not know.  <u>Mooney Depo.</u>, p. 88; <u>Bartlett Depo.</u>, p. 62.[5]  There are also variables known to customers such as whether they saw the "standard notices" and/or notices provided through means such as menus, box toppers and credit card folios.

Although seeking to minimize individualized testimony from customers, Plaintiffs also suggest that class treatment will be helpful because the jury would hear from multiple drivers rather "than having isolated testimony from a single driver (as in the brief *Lisandro* trial) …."  <u>Reply</u>, p. 6.  Yet, it was Lisandro himself who chose not to call the other drivers who were listed on his witness list (C.A. No. 15-cv-11584-WGY, ECF No. 41).  Lisandro did call a private investigator who ordered and received deliveries to testify, and the very same investigator is listed in Plaintiffs' automatic disclosures in the case.

Plaintiffs are also incorrect that Defendants' position that customer evidence is necessary under the Tips Law would render it a "nullity" on either a class or individual basis.  <u>Reply</u>, p. 7.  First, the legislature did not speak to the evidence needed to prove claims, that is the province of the courts.  Second, an individual can prove his or her case by offering evidence – just as Mr. Lisandro did at his trial – about his or her practices, his or her customers, and his or her experiences.  The jury heard from Lisandro about his experiences while delivering for another Domino's franchisee and Plaintiffs here can testify about their experiences in support of their claims.  But so too should the jury be allowed to hear from the customers to whom Plaintiffs delivered.

---

[5] Further, even if they had spoken to colleagues, GDS operates seven stores.  Mooney worked in only one store, Chelmsford, and Bartlett worked first in Andover and then in Chelmsford.  Second Amended Complaint, ECF No. 47, ¶¶ 12-13.

### 3. Customer Understanding and Intent Matters

Plaintiffs incorrectly assert that "whether a customer's expectation is reasonable does not depend on an individual customer's understanding or intent." Reply, p. 5.[6] The cases they cite do not support that assertion.

Bednark actually cuts against Plaintiffs' position. In Bednark, the Massachusetts Appeals Court reversed summary judgment because there were "material issues of fact in dispute, including whether the hotel informed relevant patrons that the administrative fee was not in the nature of a tip or gratuity." Bednark at 816 (emphasis added). The Appeals Court's non-exclusive language about the hotel's communications to customers language is directly contrary to Plaintiffs' argument that the only issue at bar here is the sufficiency Defendants' notices to customers. In fact, all footnote 19 of Bednark, fully quoted, states is that "[h]ere, in the light most favorable to the plaintiffs, the summary judgment record supports sending the case to the jury on the question of reasonable patron expectation." This statement does not support Plaintiffs' assertion that customer understanding or intent is of no moment. Any doubt is removed by reviewing the sentence to which footnote 19 is appended:

> "Section 152A(a) notably does not exclude from this category of 'service charge' a fee designated as an 'administrative' or 'house' fee under § 152A(d), leaving open the possibility that a patron, *depending on the particular circumstances*, would reasonably expect such a fee to be given to protected employees."

Likewise, the Cooney case is of no help to Plaintiffs despite the footnote 6 statement that "customer intent is not dispositive." Reply, p. 5. Cooney is plainly distinguishable because footnote 6 there relates to the Massachusetts Appeals Court's discussion concerning a charge that was expressly designated a "service charge," a designation that is synonymous with "tip" and

---

[6] Bednark v. Catania Hospitality Group, Inc., 78 Mass. App. Ct. 806 (2011); Cooney v. Compass Group Foodservice, 69 Mass. App. Ct. 632 (2007); Mouiny v. Commonwealth Flats Dev. Corp., 2008 WL 9028521 (Mass. Super. Aug. 18, 2008).

"gratuity" under the Tips Law.  Cooney at 637.

In circumstances like Cooney where an employer specifically identifies a charge as a "service charge", "tip" or "gratuity", it of course does not make sense to consider the customer's intent.  By selecting such names for the charge, the employer has plainly informed the customer that it is intended for the server.  Id. at 638-39, fn.7.  But that is not the case here at all with GDS' "delivery charge."  To recover the delivery charge under M.G.L. ch. 149, § 152A(a), Plaintiffs would have to prove that customers would reasonably expect that the delivery charge would be paid to drivers.  Customer intent is critical to that analysis.

Finally, Plaintiffs' citation to Mouiny does not help their position because there Justice Gants (then of the Superior Court, now Chief Justice of the Supreme Judicial Court) granted summary judgment to the banquet host employer because it was "doubtful that any reasonable patron would expect that a 'station fee' would be paid directly to the wait staff, since the customer would understand that the station would need to be separately staffed by an additional employee, whose wages needed to be paid by the hotel."  Mouiny at *7.  The court further found that "[i]f any patron had any doubt on this issue, the invoices provided by the [hotel] would have eliminated it."  Those invoices contained a notice, as in this case, that the fees did not represent a tip.  Id.

Plaintiffs' argument that Luiken v. Domino's Pizza, LLC, 705 F.3d 370, 372 (8th Cir. 2013) is distinguishable from this case is likewise unavailing.  Reply, pp. 7-8.  The Minnesota statute at issue in Luiken defines gratuities as "monetary contributions . . . which might reasonably be construed by the guest, customer, or patron as being a payment for personal services rendered to an employee."  Id. at 372.  Plaintiffs are incorrect that the use of the word "the" in the Minnesota statute "controlled the Eighth Circuit's decision to decertify the class."  Reply, p. 7.  What controlled the Eight Circuit's decision was that "liability under the

statute is based on an objective, reasonable person standard." The Court reasoned that "context can be critical" in applying a reasonable person standard because the varying circumstances of each pizza customer's transaction "determine the objective reasonableness of construing the charge as a payment for personal services." Luiken, 705 F.3d at 374-375.

Like the Minnesota statute at issue in Luiken, the Tips Law defines a service charge as "a fee that a patron or other consumer would *reasonably* expect to be given to a . . . service employee." M.G.L. c. 149, § 152A(a) (emphasis added). That the Tips Law uses the term "a patron" whereas the Minnesota statute uses the term "the . . . patron" is a distinction without a difference because the standard in both laws is a reasonable person standard. As the Eight Circuit held in Luiken, and as Massachusetts law holds, the reasonable person standard is evaluated in the context of the circumstances of each case. See LaClair v. Silberline Mfg. Co., Inc., 379 Mass. 21, 27 (1979) ("As in all negligence cases, the trier of fact is to ask how a person of ordinary prudence would act *in similar circumstances*.") (emphasis added). Thus, determination of whether patrons would reasonably expect a delivery charge to be given to their delivery driver necessarily depends on the circumstances of the transactions.

In sum, it seems that Plaintiffs believe that trial of the Tips Law claim will involve showing the jury Defendants' safe harbor designations, testimony about whether customers asked questions of the drivers concerning the delivery charge, and perhaps evidence regarding whether Defendants ever evaluated the efficacy of their various notices. Reply, P. 6. This intentionally simple construct ignores the full legal elements at issue in the Tips Act claim, and the necessarily particularized evidence that bears directly on those elements.

**B.     Minimum Wage**

As with the delivery charge issue, Plaintiffs present a simple rubric in order to argue that a class should be certified. In their quest for mathematical certainty, Plaintiffs gloss over the

legal and factual issues that must be rigorously scrutinized regarding class certification.

Plaintiffs assume that the only time drivers are engaged in tip-producing work is the period of time from when they walk out the door with a delivery until the time that they return to the store. The balance of recorded time, they say, is "inside work." Plaintiffs undoubtedly define "inside work" this way because it fits nicely with GDS' time-recording system and presents a situation that is deceptively simple. Plaintiffs' analysis, however, is flawed.

### A. Although Whether a Driver is Inside or Outside the Store Can Be Tracked, That Information Does Not Match the Alleged Compensable Duties

First, Plaintiffs assume that all drivers are actually working before they clock out for a delivery and after they clock back in upon return.

Second, Plaintiffs assume that all "inside work" – a term that they coined for this case – is not tip-producing work. This is not the case. Just as a bartender is engaged in tip-producing work during the time that he or she takes an order, prepares drinks and delivers them to patrons, so too do delivery drivers engage in activities while in the store that constitute tip-producing work. These activities include (1) taking and waiting to take orders, (2) preparing a specific order for a delivery that the driver is about to make by activities such as retrieving and packaging food, placing it in the hot bag, and (3) final in-store preparation such as double-checking the order, ensuring it is properly packaged, determining directions, and mapping out the most efficient route, particularly for multiple orders. Bartlett testified about this natural progression of the elements that are part of a delivery. Bartlett Depo., pp. 41-44. Further, Mooney testified that, in addition to deliveries, he also served patrons at the store. Mooney Depo., pp. 88-89. These tip-producing activities are not recorded in GDS' time-recording system and Plaintiffs cannot simply ignore them. Further, these activities will vary by driver based on factors such as shift, store location, and the number and types of other employees on duty.

B. **The Related Duties Defense**

The text of the FLSA tip credit regulation is set forth in Defendants' Opposition, pp. 12-13.  It states plainly that tipped employees may perform duties related to producing tips and still be paid at the tipped rate ("related duties").  29 C.F.R. § 531. 56(e).  Plaintiffs concede this, but then also try to fit this defense into a mathematical formula by arguing that such activities regularly exceeded 20% of a driver's time based on a sample from the GDS time-recording system.  Reply, pp. 2-3. [7]  Again, however, Plaintiffs take no account of the specifics of in-store work performed, other than to assume that if not clocked out on deliveries, drivers were performing related duties.  But that assumption is not accurate.  Even if they dispute that their in-store work related to specific deliveries was not tip-producing as set forth above, both Plaintiffs testified that they performed in-store activities that were plainly not related duties. Bartlett testified that he performed work such as building maintenance that would be "dual work" and not related duties under the DOL regulations.  Bartlett Depo., pp. 28-29.  Likewise, Mooney testified that he served customers in the store, which would be direct service work and not related duties work.  Mooney Depo., pp. 88-89.   Plaintiffs' model therefore does not work even with regard to the small subset of these two drivers.

In sum, whether the time that Plaintiffs and other drivers spent inside GDS stores is compensable at a higher rate depends on the type of duties, if any, that they performed.  Despite the existence of GDS' time-recording system, the issue of whether any of them are entitled to the regular minimum wage rate cannot be determined in "one stroke."  The minimum wage claim based on in-store work cannot, therefore, be adjudicated on a class basis.

---

[7] Plaintiffs' do not cite a Massachusetts case or DOL regulation regarding the 20% guideline.  Rather, they rely on the Flood case from New York which, in turn, relies on language in a DOL handbook.  Contrary to Plaintiffs' suggestion, Defendants only stated in their Opposition that Massachusetts courts look to federal law with regard to Massachusetts wage issues. They certainly did not "concede" that an administrative handbook was binding authority.  Reply, p. 3, fn. 2. Whether the 20 percent guideline even applies has not been settled by the First Circuit.

C.     **Conclusion**

Plaintiffs stated in their motion that "few (if any) other drivers" will enforce their rights (Motion, p. 14) and then take Defendants to task for pointing out that Plaintiffs' counsel has filed no fewer than five Domino's delivery driver cases. Reply, pp. 8-9. Plaintiffs further state, without support of any kind, that only a small handful of drivers have had the "wherewithal to come forward as class representatives." Reply, 9. 10.

Plaintiffs take no account of the fact that other drivers may not believe that their rights have been violated. This is particularly true after the October 2014 Lisandro test case, where every driver in Massachusetts was a putative class member, ended in a defense verdict. Plaintiffs speculation about the mindset of other drivers does not support class certification.

After the rigorous scrutiny required, Plaintiffs' oversimplification of the law and evidence in this case fails rectify their failure to meet their burden of showing commonality, typicality, predominance and superiority. As a consequence, their motion for class certification should be denied.

Respectfully submitted,
DOMINO'S PIZZA LLC,
G.D.S. ENTERPRISES, INC., and
GEOFFREY D. SCHEMBECHLER,
By their attorneys,

       /s/ Daniel J. Blake
Kevin G. Kenneally, BBO #: 550050
Kevin.Kenneally@leclairryan.com
Daniel J. Blake, BBO #: 552922
Daniel.Blake@leclairryan.com
LECLAIRRYAN, *A Professional Corporation*
One International Place, 11th Floor
Boston, MA 02110
(617) 502-8200
(617) 502-8201 – Fax

## **CERTIFICATE OF SERVICE**

    I, Daniel J. Blake, hereby certify that on this 27th day of April 2016, I served a copy of this document electronically through the ECF system to the registered participants on the Notice of Electronic filing (NEF).

                                                 */s/* Daniel J. Blake
                                                      Daniel J. Blake

18130929.1